WALLACE, Chief Judge, dissenting:
The district court departed upward for two reasons: (1) the number of weapons involved — 800, and (2) their purpose — waging war. I respectfully dissent from the decision to vacate this sentence.
In United States v. Lira-Barraza, 941 F.2d 745 (9th Cir.1991) (en banc) (Lira-Barraza), we set up a three-part test for reviewing decisions to depart from the Sentencing Guidelines. First, we review the legal authority of the district judge to depart de novo. Departure must be based on factors that are not adequately reflected in the Guidelines. See id. at 746. Second, we review underlying factual findings for clear error. See id. Finally, we must determine whether the extent of departure was unreasonable in light of the standards and policies incorporated in the Guidelines. See id.
The authority to depart is clear. Application Note 2 to section 2M5.2 authorizes upward departures where “the volume of commerce” is “extreme.” U.S.S.G. § 2M5.2 application note 2. As the majority correctly points out, what constitutes an “extreme” number of weapons will vary with the type of weapons involved. By its nature, the question involves drawing lines. Here, the low caliber of the handguns is more than offset by the large number of weapons involved. United States v. Tsai, 954 F.2d 155, 164-66 (3d Cir.), cert. denied, — U.S. —, 113 S.Ct. 93, 121 L.Ed.2d 54 (1992), cited by the majority, does not suggest an opposite result. In Tsai, the Third Circuit reversed an upward departure based on the sale of only 11 “weapons,” optical receivers for the Sidewinder missile to Taiwan. Id. at 165 — 66. Based on either the quantity of weapons smuggled into the Philippines by Pedrioli (800) or their aggregate value ($213,748), I believe that the district judge’s decision to depart upward was authorized.
The majority also holds that, as a matter of law, “[t]he fact that these implements of destruction might be used to wage war” is “a factor that is adequately reflected in the Guidelines,” and therefore cannot be the basis for an upward departure. Maj. op. at 460. I disagree. Application Note 2 expressly authorizes upward departures where the threat to “a security interest of the United States” is “extreme.” U.S.S.G. § 2M5.2 application note 2. Illegally exporting weapons that might find their way into the hands of hostile foreign governments, terrorists, or guerrilla factions could cause incalculable damage to our national security. Cf. United States v. Johnson, 952 F.2d 565, 583-85 (1st Cir.1991) (affirming upward departure where weapons delivered to terrorist group), cert. denied, — U.S. —, 113 S.Ct. 58, 121 L.Ed.2d 27 (Apr. 28, 1992). Consequently, smuggling firearms with the intended use of waging war does by its nature constitute an extreme threat and justifies an upward departure. No additional findings were needed to sustain the district court.
Pedrioli contends that the guns were not to be used to wage war, but to obtain *462 favors from high-ranking Philippines officials. However, he does not explain how he went from “smuggling an occasional gun” to illegally exporting approximately 800 weapons within the span of 9 months. In addition, the district judge referred to a receipt from General Ramos that “would indicate to the court generally the use of the guns.” Although it might lack the punch of a tank or a Howitzer, a handgun serves a military purpose. The majority wrongly suggests that combatants must use the weapon in question as their primary means of waging war. See maj. op. at 460. A weapon does not have to win a war, it just has to help fight it. I am unconvinced that the district judge’s factual determination that the weapons were to be used to wage war is clearly erroneous.
Finally, I conclude that the extent of departure — 11 months beyond the high end of the applicable Guideline range — is not unreasonable. In Lira-Barraza, I determined that the district judge had unreasonably imposed a sentence of 36 months, or 6 times the applicable Guideline range. See Lira-Barraza, 941 F.2d at 753 (Wallace, Chief Judge, concurring in part and concurring in the judgment). In sharp contrast, the district judge in this case added 11 months to Pedrioli’s sentence, yielding a sentence only 1.2 times the applicable Guideline range. Moreover, Pedrioli was sentenced for a much more serious crime. The district judge did not unreasonably exercise his discretion.
Given our limited review as directed by Lira-Barraza, I would affirm.